USCA1 Opinion

 

 March 19, 1996 [Not For Publication] United States Court of Appeals For the First Circuit ____________________ No. 95-1381 UNITED STATES OF AMERICA, Appellee, v. NERLY OSMARD SILVESTRE, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Francisco E. Colon-Ramirez for appellant. __________________________ Joseph J. Frattallone, Assistant United States Attorney, ______________________ with whom Guillermo Gil, United States Attorney, and Jose A. _____________ ________ Quiles, Senior Litigation Attorney, were on brief for appellee. ______ ____________________ ____________________ COFFIN, Senior Circuit Judge. Appellant, a citizen of the _____________________ Dominican Republic, who had been convicted of a Puerto Rican felony of possession of a controlled substance and subsequently deported, appeals from his federal conviction of reentering the United States without permission of the Attorney General, in violation of 8 U.S.C. 1326(b)(2). Appellant served almost a year in prison in Puerto Rico after conviction in 1991. He was deported on July 7, 1992. A month later, he returned to Puerto Rico in a yawl, telling the court at sentencing that he did not know he was forbidden to return. He remained in Puerto Rico, working on a farm, and, in April of 1993, married. He returned to Santo Domingo in 1994. His wife, a United States citizen, requested a visa for him, which the American Consulate in Santo Domingo issued on May 24, 1994.  In the application he denied having been deported and falsely averred that he had lived continuously in Puerto Rico from 1986 through 1994. He did not report his Puerto Rico conviction, but attached to his application a good conduct certificate issued by the Puerto Rico police.1 On the day after issuance of the visa, May 25, 1994, appellant arrived at the Luis Munoz Marin International Airport, presented his visa and passport, and, when a computer check  ____________________ 1 The certificate was issued to one Nerly Osmard-Silvestre. As the government points out, appellant's name is Nerly Osmard Silvestre, his true last name being Silvestre, Osmard not being his paternal last name. -2- revealed an Immigration and Naturalization Service (INS) look-out for him, underwent further examination. When asked whether he had violated any immigration laws, he was evasive. Questioning continued after a computer check had revealed his prior deportation and after appellant's rights had been read and a Waiver of Rights form signed. Appellant then admitted that he had been deported and that he had not acknowledged this fact in applying for his visa. After a jury trial, appellant was convicted and sentenced to a term of sixty-three months' imprisonment plus a period of supervised release and a monetary assessment. On appeal, appellant raises three issues. The first, his claim that the district court erred in allowing a sixteen point offense level enhancement by reason of considering his prior Puerto Rican felony conviction one for an "aggravated felony" under U.S.S.G. 2L1.2(b)(2), was acknowledged by counsel at oral argument to be foreclosed by our recent decision in United States _____________ v. Restrepo- Aguilar, 74 F.3d 361 (1st Cir. 1996). _________________ Appellant's second claim is that he was entitled to a two point reduction in his offense level because he accepted responsibility by admitting the facts constituting the elements of the crime for which he was being prosecuted. His contention in his brief on appeal is that he was simply presenting the legal issue whether a visa or "permission from the state department was equivalent to the Attorney General's consent." This dresses up a bit the theory advanced by trial counsel in opening: "therefore, -3- by giving the visa, they receive the permission from the Attorney General . . . ." Counsel then seemed to be under the impression that only the INS, an agency within the Department of Justice, was involved in the issuance of visas. In either version this claim has the merit of ingenuity, but that is its extent. Preliminarily, we observe that we review for clear error only. See United States v. Iguaran-Palmar, 926 F.2d ___ _____________ ______________ 7, 9 (1st Cir. 1991). We begin with the inconsistency between appellant's statement at sentencing that he did not know, when he made his trip by yawl, that there were any restraints on his right to reenter the United States. Not only was this inconsistent with his surreptitious mode of reentry, but with his later successful effort to obtain a visa.  Of greater moment is the fact that the visa was obtained by misrepresentation. Appellant's legal theory, even if it were to be accepted, is nevertheless predicated upon the lawful issuance of a visa, not its procurement by fraud and chicanery. Appellant's position is like that of a defendant defending a larceny conviction who admitted all of the elements of the crime such as the taking and the intent to keep, but maintains that the victim gave the property to him. If, however, the "gift" had been procured through misrepresentation or coercion, any claim that defendant would have been deemed to have accepted responsibility would be bizarre. Indeed, the claim would turn a vice into a virtue. Appellant's conduct in obtaining a visa through false -4- representation is within the spirit if not the letter of the strictures of U.S.S.G. 3C1.1 relating to the obstruction of justice. Application Note 3(b) refers to committing perjury; 3(c) refers to producing a false document or record during an official investigation; and 3(g) consists of "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." In other words, appellant seeks to parlay conduct which might conceivably support a two point increase in his offense level into a two point decrease.  ________ ________ Appellant's third issue, that the court erred in allowing improper closing references by the prosecutor to appellant's statements as "lies," requires little discussion. Although appellant in his brief asserts that objection was timely made, the only effort to object was made after the prosecutor's final remarks, when counsel said merely, "I have an objection to the closing argument." Assuming arguendo that the brevity (two and one half pages of transcript) of the closing argument and its focus on appellant's misrepresentations sufficiently alerted the court to the basis of objection, we find no error. Here the prosecutor referred on three occasions to the statements made in applying for the visa as lies or false statements. It is hard for us to see any dereliction of duty here, even though we have been alert to prosecutorial excess. Appellant based his defense on having obtained a visa. The fact that his success was brought about by misrepresentations was both -5- relevant and undisputed. There is no hint here of the prosecutor injecting his own opinion. Nor, indeed, could these references have added anything to what was already conceded before the jury. AFFIRMED.  -6-